Smith, J.
There is a proceeding brought by the State of Ohio on the relation of the Attorney General of the state, questioning the right of the defendant company to bring or maintain certain proceedings begun and now pending in the probate court of Butler county,Ohio,against the Hamilton & Lindenwald Electric Transit Company, to condemn the joint use with said company of certain of the tracks of said last named company over and along certain streets of the city of Hamilton, and over a bridge spanning the Great Miami river in said city, on the ground that for the reasons stated in the petition the defendant company has no right in law to condemn or appropriate said joint use of the Hamilton & Lindenwald Electric Transit Co.’s road, or to condemn or appropriate any way, or right of way inside the corporation limits of said city, and that it ought to be ousted from the exercise of any of the unlawful claims and acts above stated, and restrained from further attempting to exercise any of them, and the prayer is that the court so adjudge.
The case was presented to us on a general demurrer to the petition, which reads as follows:
(State of Ohio, Butler County, Circuit Court.)
The State oi Ohio ex rel. F. S. Monnett, Attorney General of the State of Ohio, plaintiff, v. the Cincinnati & Hamilton Electric Street Bailway Company, defendant.
. “Petition in Quo Warranto.”
F. S. Monnett now comes and represents to the court that he is the attorney general in and for the state of Ohio, duly elected, qualified and acting as such attorney general, and as such attorney general gives the court here to understand and be informed that the defendant, the Cincinnati and Hamilton Electric Street Bailway Company,is a corporation incorporated and organized under the laws of the state of Ohio,and has its principal office and place of business in Hamilton, Butler county, Ohio, and has constructed and is operating a part of its railroad in Butler county, Ohio; that by the second section of its articles of incorporation it is provided thus:
*82 Second: Said corporation is to be located at Cincinnati in Hamilton county, Ohio, and its principal business there transacted; that by the third section of its articles of incorporation it is provided as follows:
“Third: Said corporation is formed for the purpose of building, acquiring, maintaining, constructing, equipping, establishing, operating, leasing and owning a street railway with all necessary turnouts, side-tracks and switches, (having Cincinnati, Ohio, and Hamilton as its termini), and to be operated by electricity or other motive power except steam for the conveyance of passengers, baggage, packages, ' express matter and United States mail (and freight) thereon over the full distance of said route or any portion thereof as the corporation may deem prudent and necessary, and passing in and through the eountes of Hamilton and Butler between said cities of Cincinnati and Hamilton or any part thereof, and with the right to extend the same beyond either terminus.
Relator says that on June 23d, 1897, the city council of said city of Hamilton passed an ordinance granting to the said defendant the right to construct, maintain .and operate a single or doublB track street railroad commencing in Front street on the south side of High street; thence south on Front street to Wood street; thence east on Wood street to Second street; thence south on Second street to Washington street; thence on Washington street to Frankfort street; thence south on Frankfort street to Lane street; thence southward along Lane street to South avenue; thence east on South avenue to Central avenue; thence southward on Central avenue to the C. H. & D. Railroad crossing:
Said ordinance in section 2 also provided that said railroad shall be constructed as near as practicable along the center of said streets and alleys except on Front street between High and Court street,where said tracks shallbelaid on the west side of the street so as to make the track of Front street south of Court alley in the center of the street.
And said ordinance in section 4 thereof provides that said company shall have the right to carry passengers, baggage, packages, express matter and United States mail.
Relator says that the said defendant on the--day of September, 1899, made application to the board of control of the city of Hamilton for permission and authority to construct, maintain and operate an extension of said route hereinbefore described, and that said board of control on the 27th day of September, 1899, passed an ordinance granting to the defendant, its successors and assigns the right to construct, main *83 tain and operate an extension of its track and line of railway in the city of Hamilton as follows:
Commencing at the present northerly terminus of the existing tracks of said company on Front street; thence by curves westward in High street; thence along High street to the bridge across the Miami river; thence over and across said bridge to Main street; thence along Main street to B street; thence by curves northerly into ■ B street, providing however, that except on the curves from Front street into High street and Main street into B street said company shall use and occupy only the existing street railway tracks, and existing street railway electrical structures and equipments except trolley and feed wires on said street. And by section 2 of said ordinance it is provided that said street railroad shall be constructed and operated as a double track street railroad on High street from Front street to the bridge, across the Miami river, and over and across said bridge to the westerly side of A street and on Main street to the westerly side of A street to B street, and by curves into B. street as a single track railroad.
Relator says that before the passage of said last named ordinance by the city of Hamilton, Ohio, no public notice of the application for said extension was given by the clerk of the corporation in one or more daily papers for a period of three consecutive weeks as required by law, and that therefore said ordinance is illegal and void.
Relator says that it is not true as recited in said last mentioned ordinance that a written consent of the majority of the property owners on the line of said proposed extension of said railroad represented by the feet front on the lots and lands abutting on said street and highways along which extension is proposed to be constructed, to the building and operating of said railroad over said extension has been given to said company, and it is not true that such consents have been filed with the clerk of said city, and relator says that in truth no such consents were given or filed, and for this reason said'ordinance is a nullity.
Relator says that defendant’s articles of corporation were granted and its road built solely under the authority of the act of the legislature of Ohio,passed May 17th, 1894, vol. 91, O. L., 285, entitled “An Act to authorize and regulate Electric Railroads”.
Relator further says that in the year 1891, a street railroad company, a corporation duly incorporated under the laws of Ohio in pursuance of law and of ordinance of the said city of Hamilton and the order of the board of commissioners of Butler *84 county, Ohio, built and has ever since operated a passenger street railroad in said city, a part of which is between said B street where it connects with Main street,and extending thence along Main street eastward to and across the bridge across the Great Miami river; thence along High to the east side of Front street in said city, and its cars have been running- at only a few minutes intervals over the same since its completion, the name of said company being- the Hamilton & Lindenwald Electric Transit Company, and that it has a double track from the west side of said bridge to the east side of Front street, and has constructed and is operating in said city about nine miles of street railroad.
.Relator says that the existing street railroad between the terminus of defendants railroad at Front and High streets and the intersection of B and Main streets where said defendant’s road will curve into B street, is owned and operated by the Hamilton & Lindenwald Electric Transit Company as a .part of its street railroad system, and that the distance between said points over which said ordinance authorizes defendant to operate its said railroad, is 2310 feet, a part of which is double track.
Relator further says that the said defendant company has only constructed and has in operation in said city of Hamilton its tracks on the route defined in the original ordinance herein set forth, the distance between the termini of its said route as constructed and operated being over 7060 feet, so that the said defendant company has not constructed and has not in operation in said city between the termini of the route eight times as much railroad way as it seeks and claims the right to appropriate of said the Hamilton & Lindenwald Electric Transit Co.
Relator says that the bridge over the Great Miami river between High and Main streets is 490 feet lone:, and that defendant has applied to the county commissioners of Butler county, Ohio, for the privilege of operating its said railroad over the railroad track of the Hamilton & Lindenwald Electric Transit Company, on said bridge, the double track of which on said bridge is 980 feet, and that said county commissioners have refused said defendant that right, and relator therefore says that said defendant has no right or authority whatever to operate its railroad on the Hamilton & Lindenwald Electric Transit Company’s track over and upon said bridge, and relator says that said bridge is the property of said Butler county, and is exclusively under the control of the commissioners of Butler county, Ohio, and that the board of control of the city of Hamilton has no legal right or authority to authorize defendant to operate its said railroad over and upon the track of the Hamil *85 ton & Lindenwald Electric Transit Company over said bridge.
Relator says that said defendant wrongfully and ¡¡illegally claims and is attempting a certain franchise, privilege and .right in contravention of law in this, that it* claims” thel’right against the wish and consent of said Hamilton & Lindenwald Electric Transit Company, to appropriate by condemnation proceedings in the probata court of„Butler county, Ohio, the joint ase of a portion of said street railroad of, said, thelHamilton & Lindenwald Electric Transit Company, on said High-street over and across the said bridge and along the said Main street between said B street and along theJeast;side of Front street in said city, to-wit, its single track on Main street fronUtheJcenter of B street to the west curb of A "street, it s'f double track on Main street from the west curb line of A. street to and across the Great Miami river conneeting Main and High streets in said city, the double track on High street from”the bridge^to the center of Front street in said city,the total feet sought to he condemned being about 2310 feet.
Relator says that said defendant has ¡commenoedüwrongf ally and illegally in the probate court of Butlerjcounty, Ohio, said condemnation proceedings against the Hamilton &¡Lindenwald Electric Transit Company to condemn the joint ussTwitb? said company of so much of its tracks as lies between said point in B street and said point in Front street above described, andTsaid action is now pending in said probate court, anda jury is about to be empanelled and sworn to assess the compensation and damages by reason of said appropriation to be awarded to said Hamilton & Lindenwald Electric Transit Company, all of which is without the consent of the said the Hamilton & Lindenwald Electric Transit Company, and the said defendant as aforesaid wrongfully claims that it has the right to have all of its railroad over which it is operating outside of the city of Hamilton counted in order to claim that it has more than «gilt times as much track in operation as it seeks to appropriate of she Hamilton & Lindenwald Electric Transit Company__
Relator says that all of the defendant’s railroad constructed and in operation outside of the city of Hamilton is an interurban railroad, and is not a street railroad.
Relator says that the railroad of the defendant constructed and in operation without the city of Hamilton is about thirteen miles in length, and was so constructed by authority ganted by the county commissioners of the counties of Butler and Hamilton, and over a turnpike leading from Hamilton to Cincinnati, and under and in pursuance of said act of May 17th, 1894, 91 O L., 285; and relator says that the said defendant oompany re *86 fuses to enter into traffic arrangements with said existing railroad company to-wit, the Hamilton & Lindenwald Electric Transit Company, between B street and Front street as aforesaid.
Relator says that the only intention and purpose of the said defendant in so appropriating said track of the Hamilton <fc Lindenwald Electric Transit Company is to enable it to pass through the said city of Hamilton by making traffic arrangements with another similar and interurban railroad which has its terminus at said Main and B street.
Relator says that the defendant corporation has no right in law to condemn or appropriate said joint use of the Hamilton & Lindenwald Electric Transit. Company’s road, nor any other part thereof, nor any other right to interfere with the same except by a traffic arrangement with the said street railway company, nor has it any lawful right to condemn or appropriate any way or right of way inside the corporate limits of the city of Hamilton, Ohio. Relator says that said defendant corporation ought to be ousted from the exercise of any of the unlawful claims and acts above herein stated, and restrained from further attempting to exercise any of the same.
Wherefore, relator prays that the defendant be required to answer by what warrant it claims to condemn and appropriate the joint use of said railway of the Hamilton & Lindenwald Electric Transit Company,or to claim any right under the ordinance of the city of Hamilton or under the said articles of incorporation, or to proceed with said condemnation proceedings in said probate court of Butler county, Ohio, and that defendant be adjudged to be not entitled to any such franchise or right or to have any rights to condemn the joint use of said railway or any part thereof, or to have any right undor said ordinance of the city of Hamilton,or under said articles of incorporation, and that defendant be ousted of all the same, and that the court will issue an order restraining defendant from so doing or attempting to do any of said acts which is it above alleged defendant is about to do and threatening to do until the further order of the court, and relator prays for all other proper relief.
F. S. Monnett-, Attorney General,
Millilcin-i Shotts & MilUkin,
8. W. Bennett, A. F. Hume, of Counsel.
The first reason assigned why the relief prayed for should be granted is this; That no notice of the application by the *87 defendant company to the board of control of the city of Hamilton for the extension of their tracks over certain streets of the city was ever published by the clerk of the corporation at any time, or before the passage by said board of the ordinance granting such extension, as provided by section 2502, Revised Statutes, and therefore, that said ordinance was wholly void,and the defendant company is usurping the franchise of appropriating the joint use of the tracks of the existing street railway on the streets named in said ordinance.
In the first place we may say that in many respects the meaning of the statutes governing street railroads within and without municipal corporations is very hard to ascertain; and as to some of the questions presented in this case we have grave doubts. But it does seem quite clear that under the provisions of section 2501, Revised Statutes, that no work is to be done in the construction of a street railroad,(evidently within a municipal corporation, though it is not directly stated), until application for leave is made tu the council in writing, and the council shall by ordinance have granted the permission and prescribed the terms and conditions upon, and the manner in which the road shall be constructed and operated, etc.etc; and section 2502 provides the manner in which the council shall proceed in such case, and among other things, that such ordinance shall not be passed until public notice of the application has been given by the clerk of the corporation as therein provided, and the privilege is only to be granted to the individual or corporation who in answer to the proposals, will agree to carry passengers at the lowest rate of fare,and only when the written consent of a majority of the property holders as stated therein,is furnished.
In our opinion this section only applies, so far as notice is concerned, to the original construction of a route, and not to the extension thereof. The reason of the publication is, that proposals may be made as contemplated by the sec *88 tion, But by section 2505, power is expressly given to the municipal authorities to grant by ordinance to any corporation or individual, owning or having the right to construct a street railway,permission to extend its tracks,subject however to the provisions of sections 8437-8-9-40-1-2 and 8. And by the first of these sections,3437,the right is also given to extend an existing route within the corporation, and section 3439 again requires consents to such extensions, of the abutting owners as before stated, and making the provisions of sections 2501, 2503, 2504 and 2505, apply. But section 2502, the only one requiring publication, is not made to apply to the extension.
Second. It is claimed that the defendant company is usurping a franchise in seeking this condemnation, because the city of Hamilton, by the board of control, had no right to pass the ordinance giving to it the right to use the tracks of the Hamilton & Lindenwald Co., as it did.
The length of the tracks of the last company which it is proposed that the defendant company shall use in its extension, is 2310 feet. The length of the tracks of the Cincinnati road within the city is 7060 feet. Section 3438 provides:
“That no authority shall be given by such municipal or county authorities to occupy the track, whether single or double, or other structure of any existing street railways for more than one-eighth of the entire distance between the termini of the route, as actually constructed, operated and run over of the company or individual to whom such grant is made. ”
If this 7060 feet of defendant company’s tracks within the city is alone to be counted, it is manifest that the board of control violated the law in attempting to grant such right.
But it is claimed by the defendant Company that not only this 7060 feet of its road within the city, but all of its tracks south of the city to^Oollege Hill shall be taken into the account. If this be so, its tracks so in use amount to much *89 more than eight times 2810 feet. The claim of the Relator, as we understand,on this point is,that in view of this provision,so much of defendant’s road as lies within the city is to be considered as one road, and'tbat part of it without the city as another road.
As to this matter, we think there is much ambiguity in the .statutes, It seems however, to us, that the statute,sections 3437 and 3438,authorizes street railways to be “constructed or extended within or without, or partly within and partly without any municipal corporation or unincorporated villages.” That is,if a corporation is organized under a charter which gives it a right to construct its road, to a point, say within the city of Hamilton (as we think was the case here), and say, to Cincinnati, that it is authorized to construct its road between these termini if it can obtain a grant from the city of Hamilton to construct its tracks within that city, and from the county commissioners or other proper authority outside of the city of Hamilton, This is what section 3438 seems to mean; and that obtaining those grants from the different authorities does not make them two or more separate roads, but it is one and the same road, and in view of the proviso to the last named section, in estimating the lengeh of the tracks, actually constructed, operated and run over by it, the distance between the termini so constructed, operated and run over is to be estimated, and not simply so much of it as lies within the city. Whether this is a just and equitable provision, or whether it would have been enacted in view of the present condition of affairs may well be doubted. But if the statute so provides,that is the end of it.
Third. It is urged that on the allegations of the petition, the board of control had no authority to grant any right to the defendant company to use the bridge over the Miami river, and that in the proceeding in the probate court it has *90 no right to condemnHrom the Hamilton & Lindenwald Oo. the joint use of its tracks over the same, for the reason that such bridge is the property of Butler county, and is under the exclusive control of the commissioners of said county, and that such commissioners have refused to grant permission to defendant company to pass over the same,
The facts in regard to the ownership of the bridge or the law under which it was constructed, or whether it is within the city of Hamilton, are not definitely set out in the petition, but it is conceded in argument that it was built by the commissioners of said county under a special act of the legislature, passed March 7, 1892, and that it is within the city of Hamilton, and now, and has for many years constituted a part of the public highway, and is a great thoroughfare connecting two of the most public streets of the city. There is nothing in the act under which it was built by the county commissioners, that expressly gives them any control of this bridge after its erection. On the other hand we understand that, by section 2640 for instance, the municipal authorities “have the care, supervision and control of all public highways and bridges within the corporation,’’ and this even if the bridge be built by the county. But if this be not so, the county is not a party to this condemnation proceedings, and it is difficult to see why the state should intervene in this way to protect its rights, which it would seem could not be affected by a proceeding to which it is not a party,
Fourth. The further claim of the Relator is that the relief sought should be granted, for the reason that since the passage of the act of May 17, 1894, (91 O. L., 285), under which it is claimed the defendant company was organized, it cannot condemn the right to the joint use of the tracks of an existing street railroad, and can only acquire the right to use them by purchase, lease or traffic arrangement. It is true that such statute and another passed at the same ses *91 sion,May 21,1894,(91 O.L.,379),do confer power upon such companies to make traffic arrangements with another company owning or operating a line within a municipal corporation, but we do not understand that those statutes provide that this is the only way in which the right can be obtained, or that it in any way interferes with the right to appropriate as given by section 3440. (30 Ohio St., 604).
Fifth. The remaining question is this, whether in a case of this kind, where application is made for the extension of a route already in operation in a city or other municipal corporation, and that application is granted by the city authorities, and the right is limited to the use for the whole or a part of the distance of the track of another existing street railroad, and existing street railway, electrical structures and equipments, except trolley and feed wires, that the consent of the abutting proprietors on that part of the road where the existing tracks are to be used, must be obtained,as it would be if the whole road was to be constructed. In the latter case, section 3439, certainly requires that the consents be given. But we are of the opinion that if the ordinance of the municipal corporation granting a right to a street railroad company to extend its tracks within the same, simply requires that for some part of such extension the company to which the right is so granted shall use the existing tracks of another company,and it is not authorized to construct a new track on that part of the route, that no consents thereto are necessary, the statute proceeding upon the idea, we suppose, that the original consents to the use of the street for one railroad track in effect is a consent to the use of said track by another company. Such seems to have been the holding of the court of common pleas of Cuyahoga county in the case of The Broadway & Newburg Co. v. The Brooklyn Co. 10 Law Bui., 72, which itjs said was affirmed by the circuit court of that county and by the supreme court without report. But as the ordinance passed *92 by the board of control in the case before us provides that except on the curves mentioned, in extending its tracks ag granted to it, the defendant company shall use only the “existing street railway tracks and existing street railway electrical structures and equipments, except trolley and feed wires,’’ and by implication, at least, the privilege is granted to the defendant company to erect new trolley and feed wires on said street, and the right being expressly given to construct such curves on the streets, does this alter the case and make consents necessary ?
Alex. F. Hume,and Millikin Shotls & Millikin, for Relator.
Frank N. Wilcox,and W. C. Shepherd, for Defendant.
On this point I have entertained considerable doubt, but we have reached the conclusion that they are not necessary. So far as appears,the curves authorized to be constructed, may be wholly constructed in the space at the crossing of High and Front streets, and Main and B streets, and not be in front of the property of persons owning property abutting on the same, and we think the placing of a trolley or of feed wires for the use of the tracks by the defendant company is not such a construction of an extension as to require consents. But if they are, it is exceedingly questionable whether this would entitle the state to intervene in this kind of proceeding to set up a claim of this character, such claim, we think, should more properly be asserted by the parties in interest, and in different actions, See 50 Ohio St. ,239. On the whole case, we think we ought to sustain a demurrer to the petition and dissolve the temporary injunction heretofore allowed.